UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* MARK WISMER, | § § § | |
| *Plaintiff,* | § § | |
| *v.* | § § | CIVIL ACTION NO. 3:12-CV-1894-B |
| BRANCH BANKING AND TRUST CO., | § § § | |
| *Defendant.* | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Branch Banking and Trust's ("BB&T") Motion to Dismiss ("Motion") (doc. 19). BB&T seeks dismissal of this False Claims Act ("FCA") cause of action brought by Relator[1] Mark Wismer ("Wismer") on behalf of the U.S. Government, which declined to exercise its right to intervene in this matter. The Complaint (doc. 2) alleges BB&T submitted false reimbursement claims to the Federal Deposit Insurance Corporation ("FDIC") in violation of two FCA provisions: 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B). For the following reasons, the Court GRANTS BB&T's Motion, and DISMISSES WITHOUT PREJUDICE both Counts of the Complaint.

I.

BACKGROUND

In the midst of the 2009 economic downturn, Colonial BancGroup, Inc. ("Colonial") closed and

---

[1] "Relator," sometimes referred to as a "qui tam plaintiff," is the name used to denote a private individual suing on behalf of the U.S. Government under the FCA.

entered into receivership with the FDIC.[2] Compl. ¶ 15. As the receiver of $16.8 billion in assets compared to $24.3 billion in liabilities, the FDIC immediately looked to pass Colonial's holdings off to another bank willing to assume Colonial's liabilities, service its loans, pay a premium for its deposits, and maximize the value of its assets. Id. ¶ 16. On August 14, 2009, the FDIC did just that by entering into a Commercial Shared-Loss Agreement ("CSLA") with Defendant BB&T, a corporation in the banking services industry. Id. ¶ 17. Under the CSLA, BB&T acquired/assumed certain Colonial assets and liabilities, and in return, the FDIC agreed to "reimburse BB&T in connection with the sale of ["Shared-Loss Assets"] for (1) 80% of losses incurred up to $5 billion and (2) 95% of losses in excess of $5 billion." Id. ¶ 17. Reimbursement, however, came with certain conditions detailed in the CSLA, including BB&T's duty "to use its best efforts to maximize collections with respect to Shared-Loss Assets." Id. ¶ 46.

Sometime in 2010, BB&T opened bidding on one of the Shared-Loss Assets: a promissory note executed by Eldorado Commons, LP ("Eldorado") and secured by property located in Texas (the "Eldorado Note"). Id. ¶ 20–21. Interested in the property encumbered by the Eldorado Note, Relator Wismer—President of Stonemoss Capital Corporation ("Stonemoss")—contacted BB&T Vice President Carson Wright ("Wright") in an effort to submit a winning bid. Id. ¶¶ 21–23. However, Wright began acting evasively, telling Wismer no letter of intent was necessary, and later indicating BB&T was in the process of approving a third party bid. Id. ¶¶ 22–24. Then, after Wismer submitted a letter of intent, Wright provided the undisclosed third party an opportunity to bid higher, but gave Wismer no such opportunity. Id. ¶ 25. By searching public records, Wismer later discovered BB&T assigned the Eldorado Note to the third party bidder, Masani Group LLC ("Masani"), on September 24, 2010. Id. ¶ 33; Compl. Ex. A, doc. 2 at

---

[2] The following facts, drawn from the Complaint, are "accepted as true" for purposes of this Motion. Bass v. Stryker Corp., 669 F.3d 501, 506 (5th Cir. 2012).

52. Wismer also learned that on that same day, September 24, Masani transferred the Eldorado Note back to the original debtor, Eldorado, for $7,775,000, which amounted to a $8,301,153 discount on the Eldorado Note's original $16,079,153.00 value. Compl. ¶ 33–34.

Wismer alleges that the Eldorado Note sale was part of an elaborate scheme perpetrated by Wright and real estate broker Danny Yoo ("Yoo"). In exchange for a $1,000,000 kickback, Wright and Yoo would essentially reduce a debtor's (like Eldorado) loan obligation by selling the note at a reduced value in a sham foreclosure sale to a straw man (like Masani), who immediately transferred the note back to the debtor at this reduced price. Id. ¶ 28. By passing the transaction off as a foreclosure sale, rather than a re-financing agreement, BB&T appeared eligible for reimbursement under the CSLA to outsiders like the FDIC. Id. ¶ 34. But in doing so, BB&T would seemingly be in violation of certain CSLA provisions. Id. ¶¶ 46–47. Nonetheless, Wismer alleges that BB&T did in fact seek reimbursement from the FDIC for losses tied to the Eldorado Note sale in the amount of $6,640,922.40. Id. ¶ 34. And according to Wismer, Wright and BB&T carried out this plot on "numerous occasions," Id. ¶ 38, although he only identifies one other example: a promissory note referred to as the "Caliterra Note" that BB&T allegedly sold and sought reimbursement for in December 2010. Id. ¶¶ 20, 36–37.

After discovering Wright's alleged scheme, Wismer had Stonemoss's counsel notify BB&T of its "concerns" in a letter dated September 16, 2010. Id. ¶ 32. BB&T responded that no misconduct had been found, but subsequently fired Wright. Id. Unhappy with this outcome, Wismer filed suit on June 18, 2012 (doc. 2). His Complaint sets forth two Counts under the False Claims Act ("FCA") for BB&T's alleged violation of two FCA provisions: 31 U.S.C. §§ 3729(a)(1)(A)–(B). The Complaint seeks to recover damages and civil penalties on behalf of the U.S. Government, a portion of which Wismer would be eligible to receive under 31 U.S.C. § 3730(d).

Pursuant to 31 U.S.C. § 3730(b)(2)–(3), Wismer's Complaint remained under seal while the Government decided whether to intervene in this matter. On March 27, 2013, the Government notified the Court that it would not be exercising its right to intervene (doc. 11), thus leaving Wismer with the right to privately pursue this matter on the Government's behalf.[3] Accordingly, on April 1, 2013, the Court ordered that the Complaint be unsealed and served on BB&T. (doc. 12). Then on July 8, 2013, BB&T filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (doc. 19), which is now ripe for disposition.[4]

## II.

### *LEGAL STANDARD*

A.  Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). For a Rule 12(b)(6) motion, the Court may generally consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011). In reviewing this material, the Court must "constru[e] all factual allegations in the light most favorable to the plaintiffs." Kopp v. Klien, 722 F.3d 327, 333 (5th Cir. 2013). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

---

[3] Under 31 U.S.C. § 3730(b)(4), the Government can either "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."

[4] While BB&T also argues that it is entitled to recover attorney's fees, Def.'s Mot. 18, the Court finds that the issue of attorneys' fees is not ripe at this time since the merits of this case have not yet been fully resolved.

For a complaint to survive a Rule 12(b)(6) motion, it must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A facially plausible complaint "must allege more than labels and conclusions, . . . factual allegations must be enough to raise a right to relief above the speculative level." Jabaco, Inc. v. Harrah's Operating Co., Inc., 587 F.3d 314, 318 (5th Cir. 2009) (quoting Twombly, 550 U.S. at 555). If the allegations raise no entitlement to relief, "this basic deficiency should. . .be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuviller v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Tombly, 550 U.S. at 557).

### B. Rule 9(b) Heightened Pleading Standard

In addition to Rule 12(b)(6)'s plausibility requirement, "claims brought under the FCA must comply with the particularity requirements of Rule 9(b)." U.S. ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 267 (5th Cir. 2010). Rule 9(b) generally requires that the complaint "set forth the who, what, when, where, and how, of the alleged fraud." U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997). However, Rule 9(b)'s particularity requirement is "context-specific," and must be viewed in light of the "elements of the claim at hand" rather than "any single court-articulated standard." U.S. ex rel Grubbs v. Kanneganti, 565 F.3d 180, 188 (5th Cir. 2009). Ultimately, the question underlying Rule 9(b) is "what is required for a ticket to the federal discovery apparatus." Id. at 190. Applied properly, Rule 9(b) "serves an important screening function," weeding out suits that threaten to unnecessarily harm a defendant's reputation and "baseless claims" filed as pretext "to discover unknown wrongs." Melder v. Morris, 27 F.3d 1097, 1100 (5th Cir. 1994).

### C. False Claims Act

The False Claims Act ("FCA") "is the Government's 'primary litigation tool' for recovering losses resulting from fraud." Steury, 625 F.3d at 267 (quoting U.S. ex rel. Marcy v. Rowan, 520 F.3d 384, 388

- 5 -

(5th Cir. 2008)). To aid in its enforcement, the FCA permits, in certain circumstances, "suits by private parties on behalf of the United States against anyone submitting a false claim to the government." U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co., 336 F.3d 346, 351 (5th Cir. 2003). The FCA provisions allowing for private suits "encourage whistleblowers with genuinely valuable information to act as private attorneys general in bringing suits for the common good." U.S. ex rel. Branch Consultants v. Allstate Ins. Co., 560 F.3d 371, 377 (5th Cir. 2009).

Wismer brings this suit on the Government's behalf for BB&T's alleged violation of two FCA provisions: 31 U.S.C. §§ 3729(a)(1)(A)–(B). Section 3729(a)(1)(A) imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Section 3729(a)(1)(B) attaches liability to anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Id. § 3729(a)(1)(B). To establish a claim under either provision,[5] Wismer must allege "(1) [that] there was a false statement or fraudulent conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." Gonzalez v. Fresenius Medical Care North America, 689 F.3d 470, 475 (5th Cir. 2012) (quoting United States ex rel. Longhi v. Lithium Power Techs., Inc., 575 F.3d 458, 467 (5th Cir. 2009)).

### III.

---

[5] Any differences in the liability the two provisions impose are irrelevant in this case since Wismer asserts the same theory for both provisions: BB&T knowingly submitted claims under the CSLA for false losses tied to Wright's scheme. In addition, the Fifth Circuit's four-part test still appears viable, at least in this case, despite the the Fraud Enforcement and Recovery Act of 2009's ("FERA") amendments to the FCA, which, among other things, overruled the Supreme Court's holding regarding a defendant's intent in Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008). U.S. ex rel. Wall v. Circle C Const., LLC, 697 F.3d 345, 356 n.3 (6th Cir. 2012); see also S. Rep. No. 111-10, at 438–40 (2009). Regardless, the parties do not raise any issues related to FERA or its effect on the cases discussed herein.

*ANALYSIS*

Wismer asserts that BB&T violated § 3729(a)(1)(A) and § 3729(a)(1)(B) of the FCA by knowingly submitting false or fraudulent reimbursement claims to the FDIC. According to Wismer, BB&T submitted false reimbursement claims to the FDIC pursuant to the CSLA, which called for 80% reimbursement on losses stemming from foreclosure sales. Wismer maintains that these claims were false or fraudulent, because they sought reimbursement on losses stemming from Wright's bid-rigging and kickback scheme in violation of the CSLA. And BB&T submitted these claims "knowingly," according to Wismer, because BB&T was aware of Wright's fraudulent scheme when the claims were submitted.

BB&T argues that both of Wismer's claims should be dismissed pursuant to Rules 12(b)(6) and 9(b), because the Complaint fails to adequately plead three FCA elements.[6] First, BB&T argues that the Complaint fails to allege with sufficient particularity that a false claim was actually submitted. Second, BB&T contends that Wismer fails to plead the particular circumstances of BB&T's alleged fraud. Third, BB&T submits that the Complaint fails to show that BB&T acted knowingly. The Court addresses each of BB&T's contentions in turn.

A.   Submission of a False Claim

Both FCA provisions at issue require allegations establishing that a false or fraudulent "claim"—i.e., a "request or demand . . . for money or property"—was "presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2) (defining "claim"); id. §§ 3729(a)(1)(A)–(B). The FCA "'attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.'" Longhi, 575 F.3d at 467 (quoting Harrison Westinghouse Savannah River Co.,

---

[6] The third element—materiality—is not explicitly challenged.

176 F.3d 776, 785 (4th Cir. 1999)) (emphasis added). "Because the linchpin of an FCA claim is a false claim, 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." U.S. ex rel. Rafizadeh v. Cont'l Common, Inc., 553 F.3d 869, 873 (5th Cir. 2008) (quoting U.S. ex rel. Doe v. Dow Chemical Co., 343 F.3d 325, 329 (5th Cir. 2003)).

In his Complaint, Wismer alleges that BB&T submitted, pursuant to the CSLA, false claims to the FDIC for reimbursement on losses tied to Wright's sell-back scheme. BB&T argues that the Complaint is "devoid of any facts surrounding BB&T's supposed presentation of a false claim for payment." Def.'s Mot. 11. BB&T contends that Wismer "can point to 'no specific instances of [a relevant] record or statement.'" Id. (quoting U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp., 519 Fed. Appx. 890, 895 (5th Cir. 2013) (unpublished)). Instead, according to BB&T, Wismer merely "assumes that BB&T sought fraudulent reimbursement from the government claiming that . . . BB&T submitted some claims for loss-reimbursement in 2010." Id. (emphasis in original). The Court agrees with BB&T, and finds that Wismer has failed to allege with sufficient particularity that a false or fraudulent claim was actually submitted.

The Complaint fails to identify the requisite who, what, when, where, and how factors necessary to establish BB&T's alleged submission of false claims. The Complaint refers to BB&T's eligibility for reimbursement under the CSLA, Compl. ¶ 17, but it never explains how BB&T actually went about submitting false reimbursement claims. In fact, Wismer fails to identify a single false record or statement from BB&T, much less describe the contents of the false claims BB&T allegedly submitted. In addition, while the Complaint describes Wright's involvement in the scheme—to procure a kickback for his own benefit—it fails to explain who actually made a false or fraudulent representation to the FDIC on behalf of BB&T. It also fails to adequately allege when the false representations were made, vaguely asserting that false claims were

submitted in "2010," "December 2010," and "numerous occasions subsequent to" these dates. Id. ¶¶ 34, 36, 38.

In his response brief to BB&T's Motion, Wismer attempts to cure some of these shortcomings as to the who-what-when-where-and-how of the alleged scheme via attorney argument and extensive references to the Complaint's attachments. Pl.'s Resp. 16–17. While the Court may consider a complaint's attachments, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" Roebuck v. Dothan Sec., Inc., 515 Fed. Appx. 275, 280 (5th Cir. 2013) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)). Therefore, Wismer cannot rely on his brief, which strays far beyond mere references to the attachments,[7] and attempts to insert factual allegations via his attorney's briefing that are missing from his Complaint. Even with these new allegations in the briefing, Wismer still fails to identify the "specific actions of specific individuals at specific times that would constitute" false claims actually submitted to the Government. U.S. ex rel. Herbert v. Dizney, 295 Fed. Appx. 717, 722 (5th Cir. 2008).

Wismer also argues in the alternative that even if the Complaint fails to allege sufficient details of a falsely submitted claim, his claims still survive the Fifth Circuit's standard in U.S. ex rel Grubbs v. Kanneganti, 565 F.3d 180 (5th Cir. 2009). In Grubbs, the Fifth Circuit held that "a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference

---

[7] For example, Wismer's brief explains the Complaint's reference to a "false claim" submitted in "2010" actually refers to a "Quarterly Certificate" submitted on or before October 31, 2010. Pl.'s Resp. 17. Wismer does not merely cite this fact from the Complaint's 100-plus pages of attachments. Rather, he procures the facts from various provisions of the CSLA, and the timing in which the Eldorado Note sale allegedly took place.

that claims were actually submitted." Id. at 190. But as other courts have since explained,[8] the relaxed claim submission standard in Grubbs is limited to instances in which the "'particular details of a scheme'" are alleged, because the precise "contents of [the] false claim" are not always significant. Nunnally, 519 Fed. Appx. at 895 (quoting Grubbs, 565 F.3d at 189–90). As explained below, Wismer has not alleged specific factual details of a fraudulent scheme, and as such, the holding in Grubbs is unavailing to salvage his Complaint.

Accordingly, the Court finds that the Complaint fails to adequately plead the claim submission element of its FCA claims.

B. Fraudulent Conduct

In addition to pleading claim submission under the FCA, a relator must adequately allege that the defendant made a "false statement" or engaged in "fraudulent conduct" in connection with the alleged claim. Gonzalez, 689 F.3d at 475. Remember, when "alleging fraud," Rule 9(b) requires parties to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).

Wismer's theory of liability appears to be that BB&T's false statement or fraudulent conduct occurred when it intentionally failed to "disclos[e] [Wright's] fraudulent debt-reduction and sell-back scheme" before submitting reimbursement claims on losses tied to Wright's scheme. Compl. ¶ 48. BB&T contests the sufficiency of the allegations supporting Wismer's theory, arguing they are too conclusory and based solely on Wismer's knowledge and belief, without any indication of the source for Wismer's belief. Def.'s Mot. 15–17. Wismer counters that BB&T "seeks proof rather than particularity." Pl.'s Resp. 16.

---

[8] See, e.g., U.S. ex rel. Parikh v. Citizens Medical Center, — F. Supp. 2d —, 2013 WL 5304057, at *13 (S.D. Tex. Sept. 20, 2013) ("But though the Grubbs court relaxed the standard for pleading presentment of false claims. . . , it did not relax the pleading requirements for alleging the existence of the more crucial element—the scheme.").

Wismer maintains that he met his burden of pleading fraud with particularity by setting forth the details of how Wright's sell-back scheme operated, especially in relation to the Eldorado and Caliterra Note sales. Id. at 8–10, 16–17. The Court disagrees, and concludes that Wismer has failed to plead fraud with sufficient fact-based particularity.

For starters, most of the Complaint's allegations of fraud are either too conclusory or based solely on Wismer's un-sourced independent "knowledge and belief." For example, after detailing Wismer's experience during the Eldorado Note bidding process, the Complaint simply states: "Neither Mr. Wright nor BB&T ever intended to provide a fair bidding process to sell the Eldorado Note . . . because BB&T rigged the sale to defraud the government." Compl. ¶ 26. Rather than support this conclusion with specific facts, the Complaint instead states that Wismer "obtained information" or "independently learned" that Wright and real-estate broker Danny Yoo conspired to sell the Eldorado Note (and other notes) through a straw man back to the original debtor in exchange for a kickback. Id. ¶¶ 27–29. Indeed, BB&T highlights the Complaint's numerous allegations of fraud based solely on Wismer's information and belief. See Doc. 21, Def.'s App. 1–2. "While fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." U.S. ex rel. Williams v. Bell Helicopter Textron Inc., 417 F.3d 450, 454 (5th Cir. 2005). Here, Wismer neither contends that these facts are peculiarly within BB&T's knowledge nor sets forth the factual basis for his conclusory belief.[9] Accordingly, these allegations fall short of meeting the Rule 9(b) standard.

---

[9] Illustrative of this shortcoming is paragraph 33 of Wismer's Complaint. This paragraph first states that "'Mr. Wismer learned that the buyer [of the Eldorado Note] was Masani," and then indicates how Wismer learned this fact: he referenced the deed of trust from BB&T to Masani. Compl. ¶ 33. Wismer even took it a step further by submitting proof (the attached deed) of his particularly-stated fact. Conversely, the paragraph later alleges that "Mr. Wismer also learned that Mr. Wright had conspired to ultimately have Masani, as straw man, sell the Eldorado Note back to the original debtor." Id. (emphasis added). How Wismer "learned" this fact is never explained. While Wismer is not required to produce trial evidence of this fact, he is required to identify the

Stripped of its conclusory and unspecified allegations, the Complaint fails to plausibly demonstrate—either directly or inferentially—that fraud occurred in this case. A comparison to Grubbs—the case Wismer primarily relies on throughout his brief—illustrates this point. In Grubbs, the relator, Dr. Grubbs, alleged that the hospital he worked for and certain doctors he worked with engaged in a scheme to submit false bills to Medicare and Medicaid for services never rendered. The complaint set forth "the particular workings of a scheme that was communicated directly to [Dr. Grubbs]"—at a dinner on a particular date identified in the complaint—"by those perpetrating the fraud." Grubbs, 565 F.3d at 191. The complaint also described "how the weekend on-call nursing staff attempted to assist [Dr. Grubbs] to assist him in recording face-to-face physician visits that had not occurred." Id. at 192. Finally, Dr. Grubbs also alleged "specific dates that each doctor falsely claimed to have provided services to patients and often the type of medical service or its Current Procedural Terminology code that would have been used in the bill." Id. The flaw in Dr. Grubbs' complaint—which the Fifth Circuit found insignificant for purposes of stating an FCA claim—was that it failed to allege the "exact billing numbers or amounts." Id.

In contrast, the dearth of real facts in the Complaint—as opposed to its wealth of broad conclusions—reveals at best a suspicious promissory note bidding process that does not reasonably imply FCA fraud. Like Grubbs, Wismer details his first-hand experience with the defendant, including Stonemoss's interest in the Eldorado Note and Wright's seemingly evasive behavior in favor of an undisclosed third party bidder. Compl. ¶ 21–25. But unlike Grubbs, the fact "[t]hat fraudulent bills were presented to the Government is [not] the logical conclusion" to be drawn from Wismer's pleading. Grubbs, 565 F.3d at 192. At most, Wismer's allegations, along with those detailing BB&T's contractual obligations under the CSLA,

---

document he may have referenced or otherwise explain how he "learned" this fact.

sound in contract. But breach of contract, standing alone, is not actionable under the exacting standards of the FCA.[10] Therefore, the Court finds that the Complaint fails to plead the alleged fraud in this case with sufficient particularity.

C. Knowingly

Lastly, BB&T also challenges the allegations showing that it acted "knowingly," an element of both Wismer's FCA claims. 31 U.S.C. §§ 3729(a)(1)(A)–(B). A defendant acts "knowingly," according to the FCA, when the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance to the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." Id. § 3729(b)(1)(A).

BB&T raises a valid challenge to Wismer's case: the facts suggest that only Wright acted "knowingly" in carrying out the alleged scheme, and his knowledge would be difficult to impute onto BB&T.[11] But Wismer counters by pointing to a letter dated September 16, 2010 to BB&T from Stonemoss, stating its "concerns." Compl. ¶ 32. This allegation could be enough to show that BB&T acted "knowingly" at this stage in the proceedings, since Rule 9(b) only requires that knowledge be plead "generally." FED. R. CIV. P. 9(b). However, given Wismer's failure state to a plausible fact-based theory showing that BB&T

---

[10] A breach of contract claim is not actionable under the FCA, unless, under the false certifications theory, a relator shows that (1) the Government's payment is conditioned on the defendant's compliance with a federal statute, regulation, or contract, and (2) the defendant, despite not being in compliance with the statute, regulation or contract, knowingly certified compliance. Steury, 625 F.3d at 268. While BB&T argues the Complaint does not properly allege false certification, Wismer does not appear to urge this theory in responding to BB&T's Motion. Thus, for now, the Court declines to analyze the Complaint under the false certification theory.

[11] To hold a corporation vicariously liable for an employee's FCA violations, the relator must show the employee was "acting within the scope of their authority and for the purpose of benefitting the corporation." U.S. v. Hangar One, Inc., 563 F.2d 1155, 1158 (5th Cir. 1977). As BB&T noted, there is no reasonable indication that Wright was acting for the benefit of BB&T when he sold the promissory notes at a loss in order to receive a kickback from the original debtors.

even submitted a false or fraudulent claim under the FCA, the Court cannot yet conclude that he has properly plead BB&T "knowingly" presented a false or fraudulent claim or "knowingly" made a false record or statement. 31 U.S.C. § 3729(a)(1)(A)–(B). Therefore, the Court finds that the Complaint fails to adequately allege BB&T's guilty knowledge.

## IV.

## CONCLUSION

For the foregoing reasons, the Court finds the Complaint (doc. 2) fails to state both its claims under the False Claims Act (31 U.S.C. §§ 3729(a)(1)(A)–(B)). As such, BB&T's Motion to Dismiss (doc. 19) is *GRANTED* and both Counts of the Complaint are hereby *DISMISSED WITHOUT PREJUDICE.*

In response to BB&T's Motion, Wismer requested leave to re-plead in the event the Court found dismissal warranted. Pl.'s Resp. 23. The Court affords parties the opportunity to overcome pleading deficiencies, unless it appears certain that such re-pleading would be futile. See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) ("[A] court ordinarily should not dismiss the complaint except after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Since this Order is the Court's first declaration with respect to the merits of the Complaint, the Court concludes that Wismer should be afforded an opportunity to re-plead.

If Wismer is able to re-plead and overcome the grounds for dismissal stated herein, he must do so by no later than thirty (30) days from the date of this Order. Further, any re-pleading shall be accompanied by a synopsis of no more than ten (10) pages, explaining how the amendments overcome the grounds stated for dismissal in this Order. Should Wismer re-plead, BB&T is hereby granted leave to file responses to Wismer's synopsis. Any response shall not exceed ten (10) pages and must be filed within fourteen (14) calender days of the re-pleading. No further briefing will be permitted.

*SO ORDERED.*

*SIGNED: November 12, 2013.*

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE