UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. MARK WISMER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:12-CV-1894-B |
| BRANCH BANKING AND TRUST CO., | § § § § | |
| Defendant | § § § | |

MEMORANDUM OPINION AND ORDER

Relator[1] Mark Wismer ("Wismer") seeks to replead his False Claims Act ("FCA") cause of action against Defendant Branch Banking and Trust, Co. ("BB&T"). In its Memorandum Opinion and Order issued November 12, 2013 ("November 12 Order"),[2] the Court dismissed Wismer's two FCA claims without prejudice based on his failure to allege certain essential elements in accordance with Federal Rules of Civil Procedure 12(b)(6) and 9(b). Finding Wismer again failed to adequately allege the existence of a "false" or "fraudulent" claim, the Court DISMISSES WITH PREJUDICE the First Amended Complaint (the "Amended Complaint") (doc. 55).

I.

BACKGROUND

The facts in this case were recounted in detail in the Court's November 12 Order. To summarize, Wismer brought this action after he allegedly uncovered BB&T's scheme to submit false

---

[1] "Relator," sometimes referred to as a "qui tam plaintiff," is the name used to denote a private individual suing on behalf of the United States Government under the Federal Claims Act.

[2] Mem. Op., Doc. 50, available at 2013 WL 5989312.

or fraudulent claims to the Federal Deposit Insurance Corporation ("FDIC"). The FDIC, pursuant to its Commercial Share-Loss Agreement ("CSLA"),[3] was obligated to partially reimburse BB&T for losses incurred on the sale of assets qualifying as "Shared-Loss Assets." At least two Shared-Loss Assets—promissory notes referred to as the "Eldorado Note" and "Caliterra Note"—were purportedly sold by BB&T's former Vice President Carson Wright ("Wright") in rigged foreclosure sales in which Wright, in exchange for a kickback from debtors, arranged for the notes to be transferred, via straw men, back to debtors at a discount value. BB&T's losses on these de facto refinancing agreements manufactured by Wright's scheme were not reimbursable under the CSLA's terms; BB&T, nonetheless, could seek repayment on these losses since Wright's scheme created the illusion of a legitimate foreclosure sale eligible for reimbursement. Wismer—who says he discovered all this after Wright suspiciously turned him away while attempting to bid on the Eldorado Note—alleges BB&T submitted reimbursement claims tainted by Wright's activities even after learning of his scheme.

Based on the foregoing, Wismer filed his Complaint (doc. 2), under seal, on behalf of the U.S. Government, asserting BB&T violated two FCA provisions: 31 U.S.C. §§ 3729(a)(1)(A) and (B). After the Government declined to intervene,[4] the Court ordered the Complaint unsealed and served on BB&T, which promptly filed a motion to dismiss pursuant to Rules 12(b)(6) and 9(b). On November 12, 2013, the Court granted BB&T's motion.

---

[3] The CSLA, referenced throughout the Amended Complaint, is attached as "Exhibit C" to the original Complaint. See Doc. 2, Ex. C (hereinafter, "CSLA").

[4] As discussed in the November 12 Order, the FCA sets forth procedures by which a private individual can file a complaint under seal on the Government's behalf, and if the Government decides not to intervene, the complaint will be unsealed and that individual can pursue the claim(s) on his own. See 31 U.S.C. § 3730(b). The private individual, or relator, who brings the FCA claim(s) may be entitled to a portion of any civil damages and/or penalty awarded. Id. § 3730(d).

In its November 12 Order, the Court concluded that Wismer's Complaint failed to adequately allege each of the three FCA elements BB&T challenged.[5] First, the Court determined the Complaint failed to allege, under Rule 9(b)'s heightened pleading standards,[6] that BB&T submitted a reimbursement claim for losses tied to Wright's scheme. Second, the Court concluded that the Complaint similarly failed to satisfy Rule 9(b)'s particularity requirements for its allegations concerning BB&T's "false" statements or "fraudulent" conduct. Third, given the Complaint's shortcomings for these two FCA elements, the Court was unable to "conclude that [Wismer] has properly plead BB&T" acted "'knowingly.'" Mem. Op. 14. In light of these defects, the Court dismissed "both Counts of the Complaint" without prejudice. Id. at 15.

In his response to BB&T's motion to dismiss, Wismer had "requested leave to re-plead in the event the Court found dismissal warranted." Id. And since the November 12 Order was its "first declaration with respect to the merits of the Complaint," the Court concluded "that Wismer should be afforded an opportunity to re-plead." Id. The Court, therefore, ordered that Wismer would be permitted to re-plead if his amendments "overcome the grounds for dismissal stated" in the November 12 Order. Id. The Court also required Wismer to file a synopsis with his re-pleadings explaining how the proposed amendments cure the Complaint's deficiencies, and instructed that

---

[5] To state a claim under either of the FCA provisions at issue, Wismer must allege "(1) [that] there was a false statement or fraudulent conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit money due (i.e., that involved a claim." Gonzalez v. Fresenius Med. Care N. Am., 689 F.3d 470, 475 (5th Cir. 2012) (quoting United States ex rel. Longhi v. Lithium Power Techs., Inc., 575 F.3d 458, 467 (5th Cir. 2009)). Defendants did not challenge, and the Court did not address, the third element—materiality. See Mem. Op. 7 n.6.

[6] Each FCA element, except scienter, must be supported by allegations that "comply with the particularity requirements of Rule 9(b)." U.S. ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 267 (5th Cir. 2010).

BB&T may respond if it so desired. Accordingly, Wismer filed his Amended Complaint and accompanying Synopsis (doc. 56) on December 19, 2013,[7] to which BB&T timely responded on January 9, 2014 (doc. 58). The re-pleadings are now ripe for review.

## II.

## ANALYSIS

The issue before the Court is whether the Amended Complaint properly re-pleads each of the essential FCA elements found lacking in the November 12 Order—(1) submission of a claim, (2) that is "false" or "fraudulent," (3) with knowledge of the claim's falsity. For the reasons that follow, the Court concludes that Wismer's amendments fail to adequately allege the existence of a "false" or "fraudulent" claim attributable to BB&T. The Court, therefore, limits its conclusions that follow to the second FCA element discussed in the November 12 Order—false or fraudulent conduct—though, as seen below, the accompanying analysis, at times, overlaps with the first element the Court addressed in its November 12 Order—submission of a claim.[8]

The first element Wismer must establish for his two FCA claims is the existence of a "false" or "fraudulent" claim, record, or statement attributable to BB&T.[9] Since Rule 9(b) applies here, the

---

[7] Wismer also filed a Notice (doc. 57) on December 20, 2013 that included an inadvertently omitted exhibit. Since the Notice indicates that BB&T "is not opposed to this request," the Court considered the inadvertently omitted exhibit to be a properly attached exhibit to the Amended Complaint.

[8] To be clear, the Court does not reach a conclusion on the issues of whether the Amended Complaint sufficiently alleges that (1) BB&T submitted reimbursement claims for losses tied to Wright's scheme, and (2) that BB&T submitted these claims with knowledge of Wright's fraudulent activities.

[9] See 31 U.S.C. § 3729(a)(1)(A) (declaring unlawful any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval") (emphasis added); id § 3729(a)(1)(B) (declaring unlawful any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim") (emphasis added).

Amended Complaint must "'set forth the who, what, when, where, and how of the alleged fraud.'" U.S. ex rel. Stephenson v. Archer W. Contractors, L.L.C., — Fed. Appx. —, 2013 WL 6225221, at *3 (5th Cir. Dec. 2, 2013) (quoting U.S. ex. rel. Thomson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)).

Before addressing the November 12 Order's discussion of this element, it is worth articulating Wismer's primary theory of liability and what he must establish here under this theory. In his original Complaint, Wismer asserted that BB&T made a false or fraudulent statement when it failed "to disclose Wright's fraudulent debt-reduction and sell-back scheme before submitting reimbursement claims on losses tied to Wright's scheme." Mem. Op. 11 (internal citations and brackets omitted). This meant, preliminarily, that Wismer had to allege the particular details of Wright's "fraudulent scheme"—which forms the base of BB&T's "false" or "fraudulent" claims. But this alone would not suffice, because Wismer has never argued that BB&T should be held vicariously liable for Wright's fraud.[10] Thus, Wismer also must demonstrate, under this theory, that he adequately alleged the details surrounding BB&T's "false" or "fraudulent" concealment of Wright's scheme. The November 12 Order addressed only the former of these issues and concluded that Wismer failed, preliminarily, to adequately allege Wright's fraudulent conduct.[11]

---

[10] Wright's activities cannot be imputed to BB&T unless he was "acting within the scope of [his] authority and for the purpose of benefitting the corporation. United States v. Hangar One, Inc., 563 F.2d 1155, 1158 (5th Cir. 1977) (citing United States v. Ridglea State Bank, 357 F.2d 495 (5th Cir. 1966)). Wismer has never claimed that Wright—while allegedly inducing debtors to default on notes owned by BB&T so he could collect a kickback—was acting for the benefit of BB&T. Thus, Wismer must establish that a BB&T representative submitted a reimbursement claim with knowledge of Wright's activities.

[11] The Court touched on the latter of these issue in its November 12 Order while concluding that the Complaint failed to adequately allege BB&T's submission of a claim to the FDIC for losses tied to Wright's bid rigging scheme—an issue the Court does not address in this Order.

The November 12 Order cited a number of reasons for why the Complaint failed to adequately allege Wright's fraudulent scheme. First, the Court noted that "most of the Complaint's allegations of fraud are either too conclusory or based solely on Wismer's un-sourced independent 'knowledge and belief,'" neither of which live up to Rule 9(b)'s standards. Id. Then, considering only the detailed allegations in the Complaint, the Court concluded that Wismer failed "to plausibly demonstrate—either directly or inferentially—that fraud occurred in this case." Id. The Court reasoned that, "at best," these allegations describe "a suspicious promissory note bidding process" that, when combined with citations to "BB&T's contractual obligations under the CSLA," produced a claim sounding "in contract," but did not reasonably imply FCA fraud. Id. at 13. Lastly, the Court found it unnecessary to consider the fraud allegations under the "false certification" jurisprudence,[12] as Wismer did "not appear to urge this theory in responding to BB&T." Id. at 13 n.10.

The Amended Complaint's fraud allegations differ from the Complaint in the following ways. First, Wismer omits all references to his "information and belief" in the amended pleadings. Instead, the Amended Complaint indicates that Wismer learned how Wright's scheme worked through "Wright's long-time assistant, Nicole Brewer," who "privately approached" Wismer at Wright's office "[i]n or about late August 2010" and told Wismer about what she "heard . . . from Wright himself." Am. Compl. ¶ 4.08. Second, the Amended Complaint details the transactions that allegedly took place following BB&T's sale of the Caliterra Note, ultimately being sold to a company "controlled

---

[12] A "[s]imple breach of contract is not fraud," and therefore not an actionable FCA claim. U.S. ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009). But a defendant's breach of contract may constitute FCA fraud under a false certification theory. This theory posits that "where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a [contract], a claimant submits a false or fraudulent claim when he or she falsely certified compliance with that [contract]." U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 902 (5th Cir. 1997).

by" Henry Stewart, who is allegedly a "close business associate of . . . the Managers of . . . the original obligor on the Caliterra Note." Id. ¶¶ 4.11-4.13. These new details purportedly show that BB&T participated in the "sale and assignment of [a] Shared-Loss [Asset] to those under the control or affiliated with the original obligors . . . [in] violation of BB&T's internal policies . . . [and] the CSLA." Id. ¶ 4.14. Third, though Wismer primarily relies on the same fraud theory as before—BB&T's submission of "claims to the FDIC for reimbursement without disclosing Wright's activities"—his Amended Complaint also asserts a false certification theory in the alternative.[13]

Despite these differences, the Amended Complaint adds very little substance to the Complaint's insufficient fraud allegations. The allegations that actually get to the heart of the fraud—the kickbacks, Wright's behind-the-scenes procurement and deals with "straw men" and debtors willing to commit fraud, and his efforts to make the whole thing look legitimate—are just as conclusory as before. Indeed, as BB&T points out, these allegations "are almost identical to those contained in Wismer's original complaint," with the main differences being that Wismer does not attribute the allegations to his un-sourced knowledge and belief and does not claim that he "'was informed by an [unnamed] employee of BB&T.'" Def.'s Resp. (quoting Compl. ¶ 31). Instead, the Amended Complaint simply "names the employee"—Ms. Brewer—who supposedly supplied Wismer with the undetailed allegations. Id. But the fact that Ms. Brewer apparently told Wismer that she "heard" Wright make such conclusory proclamations about "kickbacks" and "straw men," without more, does not render the allegations sufficient under Rule 9(b)'s exacting standards.

---

[13] Am. Compl. ¶ 5.05; id. ¶ 5.06 ("Compliance with the CSLA was a condition and prerequisite for payment under the [CSLA] . . . . BB&T made fraudulent statements to the FDIC through Quarterly Certificates, which falsely certified BB&T's compliance with the CSLA.").

Further, like his Complaint, "[s]tripped of its conclusory and unspecified allegations," Wismer's amendments do not plausibly suggest a fraudulent scheme. Mem. Op. 12. The details of the Eldorado Note sale are essentially the same as before, which again, "reveals at best a suspicious promissory note bidding process" and potentially a breach of contract claim that Wismer has no standing to assert. Id. at 13. As for his Caliterra Note allegations, the newly-asserted facts reveal nothing unlawful or even suspicious on BB&T's part. Rather, the Amended Complaint merely details a series of third-party transactions (involving five companies in all) that took place after BB&T legitimately sold the Caliterra Note on October 1, 2010, with the Note eventually being sold, nearly a month later (October 27), to a company whose owner has business ties to the original debtor's managers. Notably, neither the Caliterra Note nor the Eldorado Note ended up being sold to the original debtor according to these allegations.[14] Thus, there is no indication that any specific Shared-Loss Asset ever passed through a "straw man" to the original debtors at a discount value; rather, these supposed "straw men" took full ownership of the Notes and appear to have made independent business decisions with respect to the Notes from there.

Moreover, assuming arguendo Wright's "fraud" is adequately alleged, the Amended Complaint would still fail at this element because it does not state with particularity any "false" or "fraudulent" conduct attributable to BB&T. Rather than identify the particular details surrounding BB&T's failure to disclose Wright's scheme, the Amended Complaint relies on general references

---

[14] The Eldorado Note was allegedly sold to Masani Group, LLC., who then, for unknown reasons, lowered the original debtor's obligations on the Note, but did not sell it. Am. Compl. ¶ 4.07.

to BB&T's activities.[15] By focusing on BB&T instead of its representatives, Wismer attempts to obscure his repeated failure to "identify a single false record or statement" attributable to BB&T. Mem. Op. 9. Indeed, the Amended Complaint never indicates how the losses from Wright's scheme were recorded on the "false" claims BB&T allegedly submitted, who at BB&T knowingly recorded these "false" losses, or when these unnamed individuals carried out these "false" or "fraudulent" acts. Thus, like before, Wismer's pleadings fail "to identify the 'specific actions of specific individuals at specific times that would constitute'" false statements attributable to BB&T. Id. at 10 (quoting U.S. ex rel. Herbert v. Dizney, 295 Fed. Appx. 717, 722 (5th Cir. 2008)).

Finally, the Amended Complaint's alternative theory of liability—false certification—fares no better. Under this theory, Wismer asserts that BB&T falsely certified its compliance with the CSLA (i.e., made a false statement) by submitting Quarterly Certificates to the FDIC with losses tied to Eldorado and Caliterra Note sales. Since these allegations do not include an express statement of compliance attributable to BB&T,[16] Wismer appears to be alleging an implied false certification theory. This "theory of liability under the FCA is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules [or contractual terms] that are a precondition to payment." U.S. ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 268 (5th Cir. 2010) (internal citations omitted). Though the Fifth Circuit "has not definitively ruled on

---

[15] See, e.g., Am. Compl. ¶ 5.09 (alleging that the Quarterly Certificate BB&T submitted "on or about October 30, 2010 . . . constituted a false claim and false document under the FCA because it included a claim for Shared-Loss payments to BB&T that BB&T knew . . . was the product of the bid-rigging scheme designed by BB&T's officer, Mr. Wright, to obtain kickback payments from the original obligors through the use of straw men").

[16] The CSLA, as noted in the Amended Complaint, does require certain BB&T executives to sign the Quarterly Certificates, but nowhere does the CSLA expressly state that these signatures constitute a statement of compliance, much less an express statement of compliance.

the cognizability of implied false certification claims," it did approvingly cite "the predominant view among circuit courts," which is to allow this theory "only where the government expressly conditioned payment on compliance with the underlying statute or regulation [or contract]." U.S. ex rel. Steury v. Cardinal Health, Inc., 735 F.3d 202, 207 & n.3 (5th Cir. 2013) (internal citation omitted).

Here, while the Amended Complaint asserts that "[c]ompliance with the CSLA was a condition and prerequisite for payment under the Agreement between the FDIC and BB&T," it cites portions of the CSLA that set only one pre-condition to the FDIC's payment: receipt of a Quarterly Certificate reflecting a loss.[17] Am. Compl. ¶ 5.06 (citing CSLA at 104-05). This pre-condition, of course, is irrelevant—Wismer does not claim BB&T failed to deliver its Quarterly Certificates. Other than this irrelevant pre-requisite, there is no express condition to the FDIC's payment in the portions of the CSLA that Wismer cites. Likewise, the CSLA provisions BB&T allegedly violated also lack any pre-condition to payment.[18] Instead, these provisions impose obligations that BB&T would have to show its compliance with should a contractual dispute arise. Thus, since the Amended Complaint does not plausibly allege that BB&T's "certificatio[n]" or compliance with the CSLA was "a prerequisite of payment," Wismer's false certification theory must fail. Steury, 735 F.3d at 207.

---

[17] See CSLA at 105 ("If . . . (the "Shared-Loss Amount") is positive, then, . . . not later than fifteen (15) days after the date on which the Receiver receives the Quarterly Certificate . . . , the Receiver shall pay the Assuming Bank an amount equal to eighty percent (80%) of the Shared-Loss Amount . . . .").

[18] BB&T allegedly violated its "obligations under [the CSLA] to 'use its best efforts to maximize collections with respect to Shared-Loss Assets. . . .'" Am. Compl. ¶ 5.05 (quoting CSLA at 114). While not technically a contractual violation, BB&T also apparently knew Wright's scheme resulted in "a de facto modification of the Note which does not meet the CSLA's definition of a 'Permitted Amendment,' and therefore takes the Note out of the category of a 'Shared-Loss Asset' eligible for loss sharing under the Agreement." Id. (citing CSLA at 98, 107).

III.

CONCLUSION

For the foregoing reasons, the Court concludes that Wismer's amendments fail to overcome the pleading deficiencies that led the Court to dismiss both counts of his Complaint in its November 12 Order. Therefore, dismissal of Wismer's Amended Complaint is warranted.

As mentioned in the November 12 Order, federal policy dictates that cases should be decided "on the basis of the substantive rights involved rather than on technicalities," and as such, plaintiffs must be given an opportunity to state a claim. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil § 1357 (3d ed. 2004). That said, a district court has the discretion to deny plaintiffs an opportunity to replead based on, among other things, "[plaintiff's] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." Price v. Pinnacle Brands, Inc., 128 F.3d 602, 608 (5th Cir. 1998) (quoting In re Southmark Corp., 88 F.3d 311, 314-15 (5th Cir. 1996)). In this case, Wismer has repeatedly failed to allege his FCA claims in accordance with the Federal Rules of Civil Procedure. After the Court thoroughly examined and dismissed Wismer's claims, he came back with more carefully worded allegations but essentially the same operative facts as before. His repeated failure to produce sufficient facts to satisfy Rule 9(b)'s exacting standards, in a case filed nearly two years ago, suggests that all further re-pleading will be futile. This conclusion is further supported by the fact that Wismer's Synopsis, in contrast to his response to BB&T's motion to dismiss, did not request leave to amend, suggesting he has no additional facts to add. Accordingly, the Court determines that additional re-pleading is not warranted in these circumstances. As such, the Amended Complaint (doc. 55) is hereby DISMISSED WITH PREJUDICE. Final Judgement will be issued following this

Order.

Finally, in light of the Court's dismissal of Wismer's claims and BB&T's renewed request for attorney's fees,[19] Def.'s Resp. 7, the Court ORDERS the parties to confer and file a Joint Status Report within fifteen (15) days from the date of this Order indicating whether the parties wish to brief the issue of attorney's fees. If so, the parties shall propose a briefing schedule in the Joint Status Report. If not, the Court shall resolve this issue based on the parties' existing filings.

SO ORDERED.

Dated: April 11, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[19] The Court, in its November 12 Order, found "that the issue of attorney's fees [was] not ripe," because "the merits" had not "yet been fully resolved." Mem. Op. 4 n.4. With the dismissal of Wismer's claims, BB&T's request for attorney's fees is now ripe for resolution.